Hear ye, hear ye, hear ye. The United States Court of Appeals for the 11th Circuit is now open according to law. God save the United States and this honorable court. Thank you. Welcome to this session of Oral Argument. First case up is United States v. Larry Howard, et al. First we'll hear from Mr. Lyons, who is the attorney or the appellant Stone. Mr. Lyons. Thank you, your honor. Good morning. May it please the court, my name is Steve Lyons. I'm with the Federal Defender's Office here in Orlando and I represent the appellant Raymond Stone. And I'll just confirm, is my phone reception okay? Is my volume okay for the court? We'll let you know if it's not. Go ahead, Mr. Lyons. Thank you, your honor. With the court's blessing, it's really my intent to rely on the merits of briefing in this case. I will try simply to synthesize Mr. Stone's position. We raised three issues. The first is a sufficiency issue. The second is a constitutional issue. And the third was a guidelines issue. I would, with permission of the court, advise you all that Mr. Stone has successfully served his prison time and he is home and he is under supervised release and at least as of today has been doing well and hasn't had any issues. In terms of my first issue, the Rule 29 matter, again, I think the jurisprudence is very well known. We would rest on the evidence adduced during the course of trial and we would submit, as we did in our briefing, that the transactions were arm's length, good faith matters and events that were outside the scope of the anti-kickback statute. It was insufficient as a matter of law to establish a conspiracy as well as the substantive count for the anti-kickback matter in count three. I will sit back unless there are some specific questions the court has concerning Mr. Stone. I know in terms of the constitutional issue, at least from my viewpoint, it's somewhat of an anomaly. I came across it while shepherdizing the statute. I raise it now at least to afford Mr. Stone any future opportunity to maybe rest or pursue that avenue of release. Academically, I find it very interesting. I know that the government, Ms. Heller, submitted a Rule 28J letter yesterday advising the court that a petition for cert had been granted in that particular matter. If the court wants to follow up on that, I'll try to address those questions as best I can. Outside of that, we would ask for relief, as we argued for in the brief, ask to have the court vacate and set aside Mr. Stone's convictions and sentence and remand the matter accordingly. So with that, I will sit down unless the court has any questions specific to Mr. Stone. I don't hear any, Mr. Waynes. You'll have your full five minutes and rebuttal or reply if you wish to take it at that time. Thank you, Your Honor. We'll hear now from Mr. Citro for Appellant Howard. Good morning. May it please the court, my name is Vincent Citro and I represent Larry Howard. We raise two issues in our brief that we believe merit your attention this morning. As to issue one, Mr. Howard contends that the government introduced evidence that generally painted him as a bad person worthy of punishment, but the government failed to introduce sufficient circumstantial evidence a jury could use to make a reasonable inference that TRICARE paid or could have paid Mr. Howard for a prescription as the result of Mr. Howard paying a kickback to either Dr. Bramwell or Mr. Stone. The second issue, the government crafted the indictment and presented evidence at trial that deprived Mr. Howard of his Fifth Amendment right to only be put to trial for but nothing in the record can assure the court that Mr. Howard was convicted for the same $5,000 check written on April 1, 2015 that the grand jury saw fit to indict. As issue two is a more discreet issue, I'd like to take that one up first. Two checks were written on April 1, 2015. Counsel, this is Robert Luck. As I understand the constructive amendment case law, it requires that there be some difference in the evidence in an essential element of the crime. Is that correct? For a variance, Your Honor, that is correct. Well, no, for constructive amendment. Variance is a difference in evidence that creates a prejudice of the defendant's substantial rights but doesn't necessarily affect an essential element. That's correct. Okay, so with regard to constructive amendment, which is the one that's per se reversible and the one that you argue in your brief, the essential elements of the payment of kickbacks that is in dispute in this count is the payment of a kickback willfully on this particular date in this particular amount, correct? That is correct, Your Honor. Isn't that exactly the evidence that the government presented? Well, the government presented evidence of two discreet criminal acts. Well, the government also charged a conspiracy, which incorporates a large number of things that are additional evidence of other acts that go to the conspiracy that are separate and apart from count four. And so my question is, with regard to count four, didn't the government present exactly those elements that I just stated? Payment of $5,000 on this particular date and willfully. And I understand that you challenge that it was done willfully or not, but that they presented that evidence. Yes, Your Honor, that is correct. They presented those elements that met the statutory requirements for the charge, but the government... Other evidence that went to a different charge, in this case, the conspiracy. It goes to the government is unable to tell this court which check was inextricably intertwined evidence relevant to the conspiracy and which check was charged in count four of the indictment. But how is that a constructive amendment purpose? That may be a due process issue. I'm sorry, a double jeopardy issue, an objection you didn't raise. It may be a multiplicity issue, an objection you didn't raise. It may be a specificity issue, an objection you definitely didn't raise by failing to ask for a more specific indictment. But how is that a constructive amendment issue? Well, what it does is it reduces the grand jury to a mere formalistic tool that commences a prosecution and permits the judge or the prosecutor to decide which acts that occurred on the same day, same time, that are not specifically defined, met the offense that the grand jury charged. That may be a violation of the grand jury clause. But how is that a constructive amendment? There's a specific objection that was made and a specific argument that's raised in your brief. And what my question to you is, is I understand a constructive or constructive amendment case law. And please correct me if I'm wrong. It is where there is a variance between the evidence and the essential elements. And what I want to know is what variance is there? What difference is there between the elements that were alleged in the indictment by the grand jury and that which the government presented to the jury? I believe it's similar to the case law and specifically the 11th Circuit case in Iraq, where the trial court instructed the jury that they could find the defendant guilty if the jury believed the defendant used pseudofedron to produce any controlled substance as opposed to the one charged in the indictment. Here, but there the controlled substance is the essential element. That's the argument there. And I think that's a variance issue, not a constructive amendment issue. But the element is different because the actual controlled substance that was charged by the grand jury was different. But here, there was a date, there was an amount, and there was an alleged willful payment. That's exactly what the government charged here. Nothing different. The government proved here. Nothing different, right? Well, I can't say they proved something different than what the grand jury saw, because we never know. Then isn't that the end of the answer? In other words, you may have an objection on a different ground. It may be wrong for different reasons. And I think I just told you at least three of them that I could see, but not the one that you objected to a trial and not the one that you argued in your brief, right? Well, Your Honor, with all due respect, I believe that we argued the Fifth Amendment violation in our brief specifically as to count for the proof of trial deprived of the Fifth Amendment right to be tried only upon charges returned by the grand jury, which is on page 28 of our brief. So I do think we raised that particular issue. I think trying to fit this into either variance issue was like trying to stick a round peg in a square hole. Did you not allege in your brief that this is a variance in violation of the Constitution? Isn't that exactly the argument you raised? I believe that was one of the arguments we raised, that if the court was inclined to see it as a variance, the prejudice still exists. And that is we're unable to conclusively determine from the record before the court that the check alleged in count four is the same one that the grand jury found, the trial jury found. Did you ask for any relevant jury instruction that was rejected on this issue? No, Your Honor, we did not ask for any relevant jury instruction. Did you ask for a jury interrogatory to specify the check that the jury was finding? No, Your Honor, we argued to the jury that they were unable to determine which of the two checks that were introduced into evidence during trial the grand jury found, and therefore they should return a verdict of not guilty. Counsel, wasn't the FBI agent asked specifically at trial which check was related to count four, and she specifically stated what that check was? Yeah, Your Honor, I will look at that during the break of my argument. I do not recall that right now. I'll tell you exactly what to look at. Look at docket entry 276 at page 198, where Agent Crenshaw specifically testified that check number 1651 and no other payment served as the basis for count four. Well, with all due respect, Your Honor, there was no proof that Agent Crenshaw testified before the grand jury. We made a Jenks Act motion before each witness testified. No grand jury transcript was turned over in response to Agent Crenshaw, the Jenks motion made when Agent Crenshaw was on the stand. And so I don't think that's a credible allegation because it doesn't appear, at least from the government's production, that she ever testified before the grand jury. I'm not going to assert that the government violated its Jenks obligations. But how is there a constructive amendment as argued to the judge and as argued in your brief from that testimony that that check is the basis for count four, which is also on that same date and the same amount alleged by the grand jury? How is that a bearing? Simply that the FBI agent doesn't get to increase the scope of the grand jury's indictment. Okay, how did it increase the scope? If the indictment is on this date, on this amount, this was willfully paid, how is that different from what the agent testified to? How is it a bearing? The agent testified that out of the two checks the jury saw, one was specifically referred to by the grand jury. And it does not appear that Agent Crenshaw either testified before the grand jury and certainly did not participate in the deliberations before the grand jury. Yeah, but how is it that you're not answering my question, counsel? How is it a variance from what the grand jury charged? How is it different? It's not a variance, Your Honor, as to the elements that the government had to prove. Then isn't that exactly why it fails as a constructive amendment? Because that only goes to... Something is a constructive amendment only if it attacks or is different on the essential elements. Isn't that the ballgame? Your Honor, I understand your question, your position. I think the variance argument... It's not my position, I'm asking a question. As I understand the law here, and I'll read it to you, quote, a constructive amendment occurs, quote, when the essential elements of the offense contained in the indictment are altered to broaden the possible basis for conviction beyond what is contained in the indictment. Where is the difference in the essential elements that were broadened? Your Honor, the essential elements do not change. However, it's still a violation of the Fifth Amendment because the grand jury picked one of two discreet acts, the government introduced two discreet acts, and were unable to assure anybody that Mr. Howard was convicted on the discreet act for which he was charged. That's the prejudice he still has. It exists today, regardless of the second prosecution commences, and he brings a double jeopardy claim. Counsel, let me go back to my original question. If your problem is the jury didn't specify which of the two checks it found beyond a reasonable doubt, or didn't, to be more specific, specify that it found both checks beyond a reasonable doubt, then why didn't you ask for a jury instruction that the jury couldn't convict unless it found both checks beyond a reasonable doubt, or for an interrogatory to the jury to specify which check or both checks it found beyond a reasonable doubt to preserve your issue? Well, Your Honor, I believe we preserved our issue at the court below. I don't believe that the case law supported a specific jury interrogatory, and the instructions that the jury got, they still had to unanimously agree on at least the check. If your position is correct, the law would have supported the jury interrogatory. If the obligation of the court is to ensure that the conviction that the jury determines based on proof beyond a reasonable doubt of a particular check or checks matches the check that the grand jury specified, then you have an obligation to preserve your objection to ask that the judge require the jury to specify that, or instruct the jury it can't convict unless it finds both. Why not? I mean, why shouldn't that be your burden to preserve, to avoid the violation that you see here, and to avoid the injury that you see to your client, and to protect the rights that you're asserting? Why isn't it your obligation on behalf of your client to ask for a jury instruction or jury interrogatories that would have done exactly that? I believe it would have been our obligation. We should have done so in hindsight, but I don't think the obligation uniquely rests with us when it goes to an error under the Fifth Amendment, and the court was well apprised, as well as the government, as to our position on two checks, an inability to determine which one referenced in the grand jury, unlike count six where they actually put in the check number, and which one the trial jury was asked to consider as being a violation of count four. Okay, have you got anything else? I, of course, can't see your time. Your Honor, I'm over my time limit. I was responding to the questions, but thank you. That's fine. You've got your full two minutes in reply. Thank you. We'll hear now from Mr. Bagdaddy on behalf of Appellant Brownlaw. Yes, Your Honor. May it please the court? Excuse me, can you hear me? Yes. All right. Your Honor, I actually intend to only argue the sentencing issue in this case, and so the question I believe here is whether or not Judge Byron abused his discretion in giving too much weight to... too much weight in considering a downward departure all the way to probation. I think I'll rest mostly on the briefs that I submitted, but just a brief recap on what happened. Judge Byron considered the 3553 factors. He put great weight on the 50-plus, I believe 54, 55 letters that were written by people Ms. Bramwell knew who were willing to testify on her behalf. He took into consideration the collateral consequences. He took into consideration deterrents that would be involved, namely the fact that she would lose her medical license, that this was out of... Counsel. Yes. This is Lisa Branch. I have a question about this issue. I know the district court noted that Bramwell was not directly involved in the recruiting of patients, but didn't she play an equally important role in that she participated in over 80% of the prescriptions that were filled at the pharmacy, and so she was responsible for a majority of the loss? She did play a role, and that is what was found, that she did play a role in writing a lot of the prescriptions, yes. And given the importance of the deterrence factor in white-collar criminal cases, how does the probationary sentence advance that purpose? Well, I mean, the judge... I guess my time's up. Well, the judge did not lightly impose that probationary sentence. He actually states that these generally deter, generally warrant jail time. He further stated that she has lived the life of without trouble. She's done a lot for the community. She risked losing her medical license. I believe, as I pointed out in my brief, the state could just take it through criminal or civil forfeiture. And he found that the situation warrants enough for a downward departure after considering many numerous factors, which he said he took a lot of time reading and learning those factors. Okay. I believe she... Can I actually add one more thing? If you want to take some of your reply time to do it, you can. It was just a 30-second issue. He actually, one of the things we were pointing out is that for deterrence, I believe how much she actually gained, which was just under $140,000, would have been a main factor because I believe in deterring, there's a risk and reward analysis too. While she was allegedly involved in $3.5 million or a few million dollars of the crime, the risk-reward, the fact that she did not receive that big of reward would also go to the punishment to deter. That's all I have. We'll give you seven minutes on your response time. And now we'll hear from Mr. Teller on behalf of the United States. Yes. Thank you, Your Honor. Thank you. This is Kirby Heller. I represent the United States in this case. Let me begin with the government's cross appeal of Dr. Bramwell's sentence. In this case, the district court abused its discretion, and we understand that the district court has a substantial amount of discretion in these matters. But nonetheless, the district court abused that substantial discretion by committing the kinds of errors that this court has found determinative on that question. The first is that the court failed to consider a relevant factor that was due significant weight, and that is general deterrence. I don't entirely read the sentencing transcript in the same way that Mr. Baghdadi did because the court said, and this is on page 44 of the sentencing transcript, that a physician who will lose a license and become a felon will not be deterred by a term of imprisonment. That statement is contrary to statements and observations that this court and other courts have made about the importance of deterrence, first of all, in white-collar cases and specifically in healthcare fraud cases. Healthcare fraud is especially significant because it is so rampant, and the government doesn't have the resources to prosecute all of those cases. For that reason, general deterrence is especially important when you're talking about healthcare fraud or the kind of crime that's committed here. Counsel, let me ask you something. If you know, and I'll ask Mr. Baghdadi if you don't, the district court judge predicted that Dr. Brownwell would lose her medical license, and it was noted in the briefs filed a year ago that there was an administrative complaint against her by the Florida Department of Health. Do we know how that came out? Your Honor, it's my understanding, and again, Mr. Baghdadi can correct me if it's wrong, is that the agency that's responsible for that is waiting to see the results of this appeal. As we noted in a footnote to our brief, there are a range of sanctions that can be imposed from education to revocation of a license. But the fact that that agency is looking to see what happens as a result of this appeal suggests that the sentence may be an important determinant of what eventually happens. So we certainly don't know. The court seemed to assume that Dr. Brownwell is likely to lose her license. Well, of course, the agency could be waiting to see what happens to her conviction, since she challenges her conviction. That's true, Your Honor. Absolutely. Counsel, do you know that, and this is a follow-up to that question, and I don't know the answer with regard to doctors, but I do know with regard to other agencies in Florida, even if there's a disbarment or revocation, that's often done for a term of years and not necessarily permanent. In other words, it allows the offender to reapply after a certain period of time. Do you know that even if there's a revocation, whether that ability to reapply still exists in the medical field? I don't know the answer to that, Your Honor. Okay. Moving on to the other factors that the government asserts that the district court gave weight to that were deserving of little or no weight, the court mentioned that Dr. Brownwell is going to be a convicted felon. Of course, that's true of everybody who is convicted of a felony and also her lack of criminal history. And again, as this court had noted that criminal history Category 1 takes into account a defendant's criminal history. And in fact, again, in the white-collar area, the majority of defendants, according to sentencing commission data, are in Category 1. And then we talked about the medical license issue. The third error that the court made in... Counsel, do you agree that... And you may be getting there, and this may be related to the medical license issue, but do you agree that at least we have not said whether collateral consequences can or cannot be taken into account in the 3553 context? Well, I don't believe that... Or I'm not aware that this court has made that... ...statement generally, but the court has stated, and it's in the Coleman case that we cite in our brief, that a district court should not be... ...using as a justification the fact that a defendant's position, status in the community, or their profession, because it gives an advantage to people who have those certain characteristics that other defendants don't. So this court cites with approval in Coleman, a Sixth Circuit case, which said it's decidedly inappropriate for a court to rely on chosen profession and status in the community to justify a large variant sentence that's unavailable to defendants of lesser means. There's no doubt that that's true, but that doesn't really answer the question of whether a court is allowed to consider collateral consequences in making the 3553 determination. Well, 3553 is very broad, obviously, and it certainly could be... It's not inappropriate to consider that factor. The government's position is, in this specific case, in this specific collateral consequence, that it's not deserving of much weight, and it certainly doesn't justify the very large variance in this case. And I guess I should have said that at the outset. Dr. Bramwell's guidelines were 78 to 97 months, and the variance was down to probation. So that's a very significant variance. So even if collateral consequences are appropriately considered, they certainly wouldn't justify the kind of variance that the court imposed here. So the third kind of error that this court committed is that it committed a clear error of judgment by balancing proper factors but doing so unreasonably. So first of all, in that category, the court discounted the seriousness of the offense. So although it initially said it was a serious offense, its discussion later on discounted it. It compared Dr. Bramwell to Stone and to other defendants who commit healthcare fraud offenses. But this was a very serious offense. It was not aberrational. Dr. Bramwell participated in this crime for more than a year and only stopped because TRICARE changed its reimbursement policy and Howard stopped submitting claims, as this court was noted. She was the top prescription writer for Howard. She wrote close to 400 prescriptions in less than a year. Counsel, was there evidence of healthcare fraud, even though I understand it wasn't charged? Was there evidence that Dr. Bramwell wrote prescriptions for patients that she did not give any sort of clinical examination to or patients that she never even saw? Yes, there was evidence of that. That was obviously not a focus of the trial because the trial was just on the kickback issue, but that was discussed as sentencing and the court, again, acknowledged that. So for example, she did write prescriptions for people she didn't see. One of the witnesses who testified, a Mr. Padilla, talked about how he saw Dr. Bramwell and then she asked about whether his wife had scars or pain and then the wife ended up getting these creams. Dr. Bramwell never saw the wife. In addition, I believe it was 61% of the patients for whom she wrote prescriptions were from out of state. So again, maybe she was engaging in some kind of telemedicine. I'm not sure. Pre-pandemic, that was such a prevalent practice, but that would certainly suggest that she was not performing kinds of examinations one would assume a doctor would perform. And again, significantly, and the district court noted this at sentencing, that he didn't follow up with her patients after the TRICARE reimbursement policy changed. So they were medically necessary before the end of April. They shouldn't have become medically unnecessary after that point, at least without some follow-up. Is that kind of evidence inconsistent with the finding of the trial court that this was unlike other healthcare fraud conspiracies, that this was just essentially a payment or a pay-to-play scheme that gives less culpability? Well, again, the court, it is somewhat inconsistent, although the court did acknowledge that there seemed to be medical, that the prescriptions were not medically necessary. There was evidence to support that. This is a very serious crime. It's a crime that, although it's different from other healthcare fraud offenses, what it does is it takes money from these health insurance plans, TRICARE, which insures veterans and military, and what it does is take money from that, and a lot of money in this case and in many of these cases. So it is a very serious offense. Didn't the trial court specifically state at page 87 of the sentencing transcript, that this was somehow uniquely different than an outright fraud for which a prescription is necessary? This was more of a matter of generating an interest, generating a client base, and then writing the prescription to capitalize on that which ended when reimbursement rates changed. In other words, these were people who actually needed this stuff, and the only thing that was different was some sort of payment to generate business. The evidence seems inconsistent with that finding, does it not? It does, Your Honor, the court did make, I remember that statement in the sentencing transcript, the court did say that. I'm not entirely sure what the court meant, since the court statement said it was a question of generating interest. Well, generated interest because Dr. Bramall was paid to generate interest. That was the only reason that interest was generated for this event. So certainly there is some healthcare fraud offenses, I know the court has seen them, that involve more serious medical procedures that might be unnecessary that are billed than compounded greens. But that does not take away from the seriousness of this offense, especially when one considers the amount of money, the length of time, the number of prescriptions, all of which show that this was not aberrational, it was not a one-off. And finally, of course, the court considered the letters that were written and the testimony that was given at the sentencing hearing. And of course, that is a factor that the district court can consider and could be a factor that does warrant a variance from the guideline sentence. The government is certainly not arguing that a sentence less than the guidelines would be substantively unreasonable. Our position is simply that it does not justify the significant variance that the court imposed here. There are no other questions about the government's cross-appeal. The defendants all challenged the sufficiency, although they were not specifically argued here. So unless the court has any questions on the sufficiency claims, we can rest on our brief on that. This, just very briefly, this was a prototypical kickback scheme. Howard induced both Dr. Bramwell to write these 400 prescriptions by paying her, and he induced Stone to refer patients by paying him. And the flip side of that, of course, is they took these actions in return for receiving this money. And as to Mr. Howard's constructive amendment claim, again, our position is laid out in the brief. And I think by the court's questions, the court understands our position in that what was charged is what was proven. There was no constructive amendment. And to the extent that one could even put this in a variance peg, and I'm not sure that it is, the government proved both checks were kickbacks, illegal kickbacks, and therefore there would not be any, there was not any prejudice to Mr. Howard. Counsel, the jury found that both Stone and Bramwell were guilty of two objectives of the conspiracy, both defrauding the U.S. and the receipt of kickbacks objective. What evidence, I certainly have seen the evidence of the receipt of kickbacks. What evidence was there to support the defrauding objective? Your Honor, I believe it was the same theory and the jury was instructed that it only had to find one, although it's true it did find both. So it wasn't, there wasn't a separate, a separate theory as to defraud the United States as one of the objectives. Okay. Wait, wait, I don't understand that. There wasn't a separate theory that one of the objections was defrauding, but the jury was charged that, right? Well, it was, the jury was, well, the jury was, the evidence all went to this kickback theory, and I think the government's position was that the kickback scheme in this case both defrauded the government and specifically violated the anti-kickback statute under section 371. Anything else? Then we will, since there are no other questions, the government will rest on its brief. Thank you. Thank you. Mr. Langs, five minutes to respond to anything that Ms. Heller argued. Thank you, Your Honor. I would suggest the government really didn't give me a whole lot to comment on. So again, unless there are really any outstanding concerns I can try to address for the court. I too would rest on the merits briefing and would be more than prepared to submit Mr. Stone's case for consideration. Again, the principal issue here is the sufficiency of the evidence. You know, even if looking at the evidence adduced in the court below in a light most favorable to the prosecution, we take the position that it's insufficient as a matter of law to allow the convictions to stand, and obviously we have the remaining constitutional issue that might come into play in terms of invalidating Mr. Stone's convictions. And again, outside that, I know the guideline issue is there, but Mr. Stone is at home under supervised release at this point. So with that, if I can answer any of the court's concerns for Mr. Stone's, I will again rest on the briefing. Thank you, counsel. Mr. Citro, two minutes to answer any argument of Ms. Heller about your client. Mr. Howell. Thank you, Your Honor. Like Mr. Langs, I find myself with not a lot of response to the government's argument. We will stand on our brief as to the first issue, and that is simply imploring the court to take a close analysis of the evidence, specifically the critical element of intent that was necessary while we understand the status or the position of the appeal and the appellate standard that circumstantial evidence had to have permitted a jury to make a reasonable inference, which requires the court to look into the quantity and quality of the evidence presented. We believe as a matter of law, it's insufficient to paint Mr. Howard as an unsavory individual who was greedy and took advantage of a business opportunity that TRICARE provided to everybody. Unless the court has any questions, we'll rely on what's in the briefs. Thank you, Mr. Citro. Mr. Baghdadi, any response on behalf of Defendant Bramwell to the arguments of Ms. Heller? Yes, Your Honor, if I may proceed. One of the issues Ms. Heller brought up was status in the community. It's my understanding from the reading of that case law, they were saying that status in the community can't be argued for a lesser sentence by saying he's a prestigious member of the community. But my understanding of the case law is that you can still take into consideration collateral consequences like losing something such as a medical license. And I know the court brought up the fact that she did not lose her medical license. I can say I looked this up online with the Department of Health. It's been a while, but a few months ago I looked it up. And she did still have her medical license. But I believe Judge Byron said that she was likely to lose her license, not that she will. And I think, well, it's our opinion that that is still a major factor in deterrence. Because in any one of these cases where a medical profession uses their license to commit a crime, the government can just flat out take their license. I'm not familiar with that at all, if you're referring to the United States of America government. The federal government doesn't license her unless she's a VA doctor or something. That's a state thing. My understanding is that these licenses constitute property and that the government can have a doctor forfeit the license through civil forfeiture or even criminal forfeiture if it's used in a crime. That's news to me. I've been doing this a quarter of a century, and I thought the whole function of civil and was to take property from the defendant and use it in some other way. Oh, no, go ahead. I thought part of civil forfeiture and taking it was to seize items that was used in crimes. And I actually spoke with Mr. Citro about this case. And he actually indicated to me he's done this in his own cases when he was a U.S. attorney. Well, learn something every day. I know it's to take the fruits of crime away, but I didn't know it was to take fruit away, put it on the floor and step on it. I thought it was to be used for some other purpose or to go to the United States Treasury or often happens to law enforcement. Yeah, it's my understanding that even these cars used in selling drugs and stuff, they can just flat out seize the car that they used in trafficking drugs or transporting drugs. Yeah, but they don't go bury the car. The car has other uses. The title passes to someone else. And that's not true of professional licenses. But let's assume it is. Let's assume that the government can forfeit this or that start a forfeiture procedure. So what? What are you arguing? Therefore, that increases the likelihood she'll lose her license? Well, I'm saying if the government believes that these steps are necessary to deter crimes, and I believe that's part of the reasons why they have these laws, they do have the right to do that in order to deter crime. Therefore, the district court was more likely correct in predicting that she would lose her license? No, but the government does have disposals and sanctions such as taking somebody's license as part of deterrence. And if they did want to do something like that to deter crime, that is an option they have. If they believe it's necessary to deter crime, the government, obviously, in this case, used their discretion not to do that. Anything else? I believe that's all I have to add. And anything else, we'd rest on our brief. Thank you. We appreciate it. That's the final argument on this case. We'll take it under submission.